CHARLES PETERSON v. THE NORTHWESTERN BAPTIST
HOSPITAL.
ARTHUR M. CALVIN, RECEIVER; EARLE V. PIERCE,
APPELLANT.[1]

May 3, 1935.

No. 30,280.

*J. A. Mansfield, Godley & Olson,* and *Jean McVeety,* for appellant.
*Henry Marks,* for Arthur M. Calvin, receiver.

HILTON, JUSTICE.

The Northwestern Baptist Hospital Association, hereinafter referred to as defendant, is a Minnesota corporation organized for charitable purposes and not for pecuniary profit. Its only business is the operation of two hospitals in the city of St. Paul. On September 20, 1933, after garnishment proceedings had been instituted by bondholders, the district court appointed a receiver of all the property of every kind and description of the defendant. In that order the court found that defendant was solvent but presently unable to meet and discharge its obligations which had already matured and

[1]Reported in 260 N. W. 512.

those which were maturing. The receiver was authorized and directed to take immediate possession of all of the property and assets of the corporation and to manage and operate said property, to employ, discharge, and fix the compensation of such officers, agents, managers, superintendents, nurses, maids, workmen, and other employes as he might deem expedient; to keep accounts of the income received and the expense of operating the property and to make report from time to time to the court. Claims aggregating $28,445.60 for goods, wares, and merchandise sold and delivered to defendant, and claims for $856,094.25 by persons who had invested in bonds of the defendant, were filed. Claims for $81,600, plus $5,659.14 accrued annuities, were filed by persons holding so-called annuity agreements. Those claimants sought priority as to the latter amount. The receiver petitioned the district court recommending the allowance of the three amounts first above mentioned and requesting an order determining the question of priority of the accrued annuities. He reported therein that after paying all operating expenses he held $22,000 for distribution as the court might order. The court made an order allowing all the claims as general claims and held that the claims for the accrued annuities were entitled to no greater or prior rights than those of all other creditors who had filed claims. Earle V. Pierce, one of the annuitants, appeals from that order.

The articles of incorporation of defendant provide that the corporation shall have no capital stock; that it is maintained and operated as an institution of purely public charity; that it has the right to receive property by purchase, gift, grant, or devise, and that all of its assets and funds shall be administered solely for the carrying out of its charitable purposes. Incidental to the purposes for which it was created, defendant had issued 58 agreements designated as annuity agreements to persons who had deposited money or other property with it as gifts. The agreement provided that in consideration of the gift defendant agreed to pay to the donor an annuity, payable in two equal semi-annual instalments during the remainder of his life, and that upon the death of the person or persons named in the agreement the obligation to pay the annuities

ceased. Money and property received as donations were placed in the general fund. The amount of the annuity, varying from four to eight per cent, depended upon the age of the donor. The annuities were regularly paid up to January 1, 1933, and the interest due to bondholders was paid up to October 10, 1932. There is no provision in the annuity agreement nor in the articles of incorporation giving priority in the distribution of its assets to the annuitants, either for the principal sum donated or for accrued annuities. Neither is there any provision in our laws providing for preference in such cases. For those reasons the trial court held as it did.

We agree with the trial court that the annuity claimants are not as a matter of right entitled to preference, but we think the circumstances of this case are such as to suggest the propriety of paying the annuity claims. In his petition the receiver stated:

"Your petitioner states that every advantage has been utilized to operate the two hospitals belonging to the said defendant corporation on an economic basis; that patient occupancy of these hospitals continued to decline up to the period ending January 1, 1934, when a slight increase was noted and has continued to date; that the improvement in business notable in industry has not yet had a favorable effect on hospital business. * * *

"Your petitioner further states that the conditions have not improved to such a degree as would warrant a plan of reorganization and until such conditions arrive it is well that the hospitals continue to operate as heretofore, thereby providing an earning capacity which can be distributed to the holders of claims."

In the petition it is further stated:

"Life Insurance Companies as well as other organizations issuing annuity agreements indicate that a profit accrues and that in the past few years the percentage realized on matured annuity agreements have averaged in the case of philanthropic institutions between 65 and 80%. It is thus probable that using the law of averages of mortality of annuitants they will not receive more but less than other creditors if the terms of the annuity agreement are performed. If treated as ordinary creditors and all income is discon-

tinued, at their death on the basis of life expectancy they will have received less than other creditors."

The bondholders and other creditors have not appeared in this court. In his brief the receiver states, referring to the effect of an order of the court directing the receiver to pay the annuities:

"From the standpoint of the Corporation, and possibly also so far as the other creditors are concerned, if such an order could be made it might work out to their advantage, because as the holders died, the interest would become less and all claims for principal would eventually lapse. There is no way of determining definitely how long these persons will live. It could only be estimated on a life expectancy basis upon which basis the interest rate is arrived at in the first instance."

If this receivership was one to wind up the business of defendant and to distribute the assets to the various creditors, there is no doubt but that the annuitants, in the absence of any provision in the contract or corporation by-laws giving them a preference, would have to take a *pro rata* share the same as the other creditors. However, it is apparent that the receiver in this instance was appointed for the purpose of continuing the operation of the business. From the receiver's petition it appears that the income has increased and is continuing to increase, although slowly. It also appears that no one will be injured if the annuities are paid; the receiver points out that other creditors may be benefited. That the corporation will be benefited is beyond doubt; payment of the annuities will preserve its good will, which in this instance is of considerable value to the corporation. A substantial part of its working capital is received by donations upon a promise of defendant to pay certain annuities based upon the age of the donor. To preserve that good will so as to retain the faith of the present donors and promote further donations from them and others is manifestly of great importance to a going concern of this kind. It is as much the duty of the receiver to preserve the good will of a business that is not insolvent and is operating as it is to preserve the other assets.

"When a receiver is appointed to operate a business and preserve the good will and the value of the business as a going concern it may be inconsistent with such a duty for the receiver to disregard contracts entered into by the debtor before the receiver's appointment. The main purpose of appointment of a receiver of a going concern may be and frequently is to preserve the going concern value." 1 Clark, Receivers (2 ed.) § 428(c), p. 589.

It is obvious that the appointment of the receiver here was to "preserve the going concern value." Where the duration of the receivership is apparently temporary, as it is here, and the necessity of operation is apparent in order to preserve the good will, which is often the greatest element of value of a business, the receiver should be authorized to conduct operations until it can be determined what final disposition of the receivership property is necessary. 1 Tardy's Smith, Receivers (2 ed.) § 361, p. 957, *et seq.* See also 1 Clark, Receivers (2 ed.) § 396.

We are of the opinion that the receiver should recognize the contracts of the corporation entered into between it and the annuitants until such a time as the court may determine that conditions have so changed that defendant's affairs should be wound up and its assets distributed among the creditors. As stated before, it does not appear that anyone will be injured thereby, and it is clear that the corporation, which is still solvent, will benefit by the receiver performing the terms of the contracts with respect to payment of the annuities.

The order of the trial court is modified to the extent of permitting the receiver to pay annuities now due and those to become due until further order of the court.

Affirmed as modified.